IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,　　　)
　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff-Respondent,　　)
　　　　　　　　　　　　　　　　)　　Criminal No. 10-1534 JB
　　vs.　　　　　　　　　　　　　)　　Civil No. 15-881 JB/LAM
　　　　　　　　　　　　　　　　)
**EDWARD CHRISTY**,　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　Defendant-Petitioner.　　)

## UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

### INTRODUCTION

The Defendant-Petitioner Edward Christy ("Defendant") was convicted of two different crimes, (1) coercion and enticement and (2) possession of child pornography. Due to a substantive change of law after he pleaded guilty and was sentenced, the United States agrees that his conviction for coercion and enticement should be vacated. However, there has been no change of law or fact that undermines the evidence supporting his guilt for possession of child pornography. Accordingly, the United States opposes his request to vacate his child pornography conviction.

### FACTUAL AND PROCEDURAL BACKGROUND

In November 2009, the Defendant traveled from New Mexico to California to pick up a 16 year-old girl (hereinafter referred to as "Jane Doe" or "Doe"), who he then transported back to New Mexico. PSR[1] at 6-10, ¶¶ 8-20. The evidence established that the Defendant was aware of Jane Doe's age when he went to pick her, that he had been engaging in sexually explicit

---

[1] The PSR in this case was disclosed on December 13, 2011. Following objections by both the Defendant and the United States, it was re-disclosed on January 20, 2012 and on February 8, 2012. References to the PSR in this response relate to the February 8, 2012 re-disclosed PSR.

conversations with her for weeks prior to picking her up, and that he engaged in sexual activity with her in California and in New Mexico. *Id.* When interviewed, Jane Doe admitted that that she had consented to engage in sexual activity with the Defendant. Under New Mexico law, because Jane Doe was 16 years old at the time of the conduct at issue, she was capable of consenting to sexual activity with the Defendant. *See* Doc. 127 at 60-61 (discussing New Mexico case law on the age of consent).

As part of the investigation, BCSO detectives and FBI agents executed a search warrant at the Defendant's residence on November 10, 2009 and seized, among other items, computers and computer-related media. PSR at 10-11, ¶¶ 23-24. An examiner conducted a forensic examination of the Defendant's seized computers and computer-related media. *Id.* at 11-12, ¶ 27. The examiner found 310 child pornography images, 32 images of Doe, and 112 images of child erotica on a Hewlett Packard Laptop. *Id.* However, the examiner also found well over 600 child pornography images and videos in the Defendant's possession to include the following: 159 child pornography images and 1 child pornography video on a Memorex Travel Drive; 2 child pornography images on a 64 MB Flash Drive; 123 child pornography images and 10 child pornography videos on a Imation CD; 3 child pornography images on an Iomega Zip Disk; 81 child pornography images on a Syquest Tape Drive; and 37 child pornography images and 7 child pornography videos on a TC Desktop Computer. *Id.* at 14, ¶ 37. Finally, the examiner found chats between the Defendant and other individuals. In these chats, the Defendant invited minors to visit him in New Mexico, asked mothers for sexual access to their children, detailed his prior sexual relations with neighborhood children, and discussed his sexual interest in children. *Id.* at 13-14, ¶¶ 32-35; *see also* Doc. 21 at 5-7 (containing a detailed description by the District Court of some chats); Doc. 221 at 43-46.

The FBI sent a copy of the recovered child pornography images and videos to the National Center for Missing and Exploited Children (NCMEC) in an attempt to identify real, known children depicted in the images and videos.  *Id.* at 12, ¶ 28.  According to NCMEC, the Defendant had 127 known child pornography images from 25 different series and 6 known child pornography videos from 2 different series. *Id.*

The Defendant was subsequently indicted by a federal Grand Jury with one count of transportation of a minor with intent to engage in criminal sexual activity and three counts of possession of a matter containing a visual depiction of a minor engaged in sexually explicit conduct.  *See* Doc. 93.  After lengthy pretrial litigation, on September 30, 2011, the Defendant pled guilty, with a plea agreement, to an information charging him, in Count 1, with coercion and enticement, in violation of 18 U.S.C. § 2422(a), and, in Count 2, with possession of a matter containing a visual depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. §§ 2252(a)(4)(B), 2252(b)(2) and 2256.  *See* Docs. 193, 195.  Under the terms of the plea agreement, the United States and the Defendant agreed to a stipulated sentence of 9 years (108 months).  *See* Doc 195 at 5-6, ¶ 9a-d.  The plea agreement contained a broad appeal waiver wherein the Defendant waived his right to appeal or collaterally attack his conviction or sentence with two limited exceptions.  *See id*. at 14-15, ¶ 22.  Under the first exception, the Defendant retained the right to collaterally attack his conviction pursuant to 28 U.S.C. § 2255 solely on the basis of counsel's ineffective assistance in negotiating or entering the plea or waiver.  *See id*.  Under the second exception, the Defendant retained the right to appeal the District Court's ruling denying his motion to suppress.  *See id*.

On May 23, 2012, the Defendant appeared for sentencing.  The Court concluded that probation properly calculated that adjusted offense level for Count 1 of the information as 30.

3

PSR at 17-18, ¶¶ 50-57; *see* Doc. 221 at 21-23.  After sustaining an objection to a 4-level

enhancement, the Court concluded that the adjusted offense level for Count 2 of the information

was 32.  PSR at 18-20, ¶¶ 59-68; *see* Doc. 221 at 23, 81.  After applying the multiple count

adjustment and a reduction for acceptance of responsibility, the District Court concluded that the

total offense level was 31, which when combined with a criminal history category of I, resulted

in an advisory guideline range of 108-135 months.  PSR at 20, ¶¶ 69-77; *see* Doc. 221 at 83.  The

District Court accepted the parties Rule 11(c)(1)(C) stipulated sentence of 108 months and

imposed a life-time term of supervised release.  *See* Doc. 221 at 82-95.  Pursuant to the plea

agreement, the United States sought and obtained dismissal of the underlying indictment

following sentencing.  *See* Docs. 213-14.

On October 1, 2015, the Defendant filed the instant petition for relief pursuant to 28

U.S.C. § 2255.  *See* Doc. 250, 250-1.  The Defendant asserts the following eight grounds for

relief: (1) the Defendant is actually innocent of violating 18 U.S.C. § 2242(a); (2) the

Defendant's convictions must be vacated and the indictment dismissed due to violations of the

Speedy Trial Act; (3) the Defendant's due process rights were violated due to prosecutorial

misconduct; (4)  the Defendant was denied his Eighth Amendment right to reasonable bail; (5)

the Defendant's guilty plea was not knowing and voluntary; (6) the Defendant's guilty plea

contract is void ab initio because the consideration -- reduced sentencing exposure -- was illusory

due to his actual innocence;  (7)  the Defendant's Equal Protection rights were violated; and (8)

the state and federal statutes forming the basis of the Defendant's convictions are void for

vagueness.  *See* Doc. 250.

Notably, none of these grounds for relief allege ineffective assistance of counsel, which is

the only type of challenge permitted under the Defendant's waiver.  With respect to the

Defendant's conviction for coercion and enticement, however, principals of equity dictate that his challenge to this conviction is not barred by the appeal waiver.  This is not true, however, for the Defendant's conviction for possession of child pornography -- a conviction for which, notably, the Defendant does not make any claim of actual innocence and which conviction standing alone would have resulted in a post-plea guideline imprisonment range of 87-108 months.[2]  The United States submits that the Defendant's challenges to his possession of child pornography conviction are barred by both his guilty plea and by his appeal waiver and opposes his request that this conviction be vacated.

## ARGUMENT

A.  HABEAS REVIEW PURSUANT TO 28 U.S.C. § 2255

A conviction and sentence based on a guilty plea can be collaterally attacked only on relatively narrow grounds, including that the plea was not voluntary, that the petitioner was not advised by competent counsel, or that the court clearly lacked authority to impose the sentence. *United States v. Broce*, 488 U.S. 563, 569 (1989); *see also Mabry v. Johnson*, 467 U.S. 504, 508 1984 ("It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").  If a court finds a claim under § 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255.

---

[2] The United States arrived at this guideline range by taking the adjusted offense level for Count 2, which was 32, and reducing it by three levels for acceptance of responsibility, which results in a total offense level of 29, a criminal history category of I, and an advisory guideline range of 87-108 months.   The post-trial guideline range for this conviction, standing alone, would be 121-151 months.

B.  DEFENDANT'S COERCION AND ENTICEMENT CONVICTION

Count 1 of the information to which the Defendant pleaded guilty charged him with

coercion and enticement as follows:

> From on or about October 1, 2009 to on or about November 9, 2009, in Bernalillo
> County and elsewhere, in the District of New Mexico, the defendant, **EDWARD
> CHRISTY**, knowingly persuaded, induced, enticed, and coerced Jane Doe to
> travel in interstate and foreign commerce to engage in any sexual activity for
> which the defendant could be charged with a criminal offense, that being,
> Criminal Sexual Penetration in the Second Degree, in violation of N.M. Stat. Ann.
> § 30-9-11(E)(5), Contributing to the Delinquency of a Minor, in violation of N.M.
> Stat. Ann. § 30-6-3, and Unlawful Custodial Interference, in violation of N.M.
> Stat. Ann. § 30-4-4(C).
>
> In violation of 18 U.S.C. § 2422(a).

Doc. 193.  To sustain a conviction for this offense, the United States had to establish the

following:

> (1) the Defendant knowingly persuaded, induced, enticed, or coerced Jane Doe to
>     travel in interstate or foreign commerce, and
>
> (2) at the time the travel commenced, the Defendant intended that Jane Doe
>     engage **in any sexual activity for which any person could be charged with
>     a criminal offense**.

*See* Eleventh Circuit Pattern Criminal Jury Instruction 92.1 (emphasis added).  Under the

plea agreement and Count 1 of the corresponding information to which the Defendant

pleaded guilty, the theory of prosecution was that, when the Defendant traveled to pick

up Jane Doe, he intended to engage in sexual activity that would have subjected him to

charges for violating New Mexico's statute penalizing criminal sexual penetration in the

second degree, also referred to as "CSP II."  *See* NMSA 30-9-11(E)(5).[3]  Pursuant to this

---

[3] NMSA 30-9-11 provides in pertinent part,

   A.  Criminal sexual penetration is the unlawful and intentional causing of a person to engage in sexual
       intercourse, cunnilingus, fellatio or anal intercourse or the causing of penetration, to any extent and with
       any object, of the genital or anal openings of another, whether or not there is any emission.
       . . .

statute, "[c]riminal sexual penetration in the second degree consists of all criminal sexual penetration perpetrated . . . in the commission of any other felony." *Id.* The United States further alleged, and the Defendant admitted as part of his plea, that the sexual activity that the Defendant intended to engage in would have been perpetrated in the commission of two different felony offenses: contributing to the delinquency of a minor, *see* NMSA 30-6-3, or unlawful custodial interference, s*ee* NMSA 30-4-4(C).

Accordingly, under the theory of prosecution, the fact that Jane Doe legally and factually consented to have sex with the Defendant did not matter because the sex was perpetrated in the commission of other felony offenses, thereby establishing that he could have been charged with CSP II. While this theory of prosecution was viable on the date of the Defendant's plea and sentencing, it is no longer viable. On April 7, 2014, the New Mexico Supreme Court issued *State v. Stevens*, 323 P.3d 901, 902 (NM 2014) in which it "clarif[ied] that simply causing another person to engage in otherwise lawful sexual intercourse at the same time a felony is being committed does not constitute the crime of criminal sexual penetration during the commission of a felony."

### 1.  At the Time Defendant Pleaded Guilty, the Elements of CSP II Were Ambiguous.[4]

In *State v. Maestas*, the New Mexico court of appeals considered "whether coercion is an essential element of second degree criminal sexual penetration perpetrated in the commission of another felony (CSP II (felony)). . . ." 112 P.3d 1134, 1135-36 (NM Ct. App. 2005). In *Maestas*, the defendant, a judge, was charged with CSP II based on allegations that he accepted

---

E.   Criminal sexual penetration in the second degree consists of all criminal sexual penetration perpetrated:
. . .
     (5) in the commission of any other felony[.]

[4] In the Defendant's letter, he claims that the United States' "assertion that the law regarding the age of consent was not clear is disingenuous to the extreme." Doc. 255. The Defendant misapprehends the United States' position. The United States asserts that the law regarding CSP II was unclear, not the law regarding the age of consent.

sexual favors from a victim in exchange for leniency in the resolutions of the victim's charges. *Id*. at 1136. The felony underlying the CSP II charge was "requesting or receiving sexual favors conditioned upon or given in exchange for promised performance of an official act (official act prohibited) . . . ." *Id*. (internal citation and quotation omitted). The defendant put forth evidence in his defense that the victim seduced him to engage in consensual sexual activities and later falsely claimed that he had coerced her in order to support a lawsuit against the defendant's employer, the City of Espanola. *Id*. The jury convicted the defendant of both his CSP II and official acts prohibited charges. *Id*. at 1137. With respect to the CSP II charges, the district court instructed the jury that the essential elements were: (1) the defendant caused the victim to engage in a specified sex act, (2) the defendant committed the act during the commission of violating official acts prohibited; and (3) this happened in New Mexico on or about a specified date. *Id*. at 1137-38. The jury instructions did not require a finding that the specified sex act be unlawful when viewed in isolation. On appeal, the defendant complained that "the jury instructions on the elements of CSP II (felony) were flawed because they did not tell the jury it could only convict [the defendant] if it found that [the defendant] coerced [the victim] into engaging the various sex acts alleged." *Id*. at 1137. The defendant claimed that this instructional error harmed him because "even if the jury agreed with his view of the evidence – i.e., that [the victim] enticed [the defendant] into having sex and that the sex was therefore consensual – the jury instructions nonetheless compelled the jury to convict [the defendant]." *Id*. The New Mexico Court of Appeals disagreed. *Id*. at 1138. In reaching this conclusion, the court noted that "[s]ection 30-9-11(A) defines the base crime of criminal sexual penetration as the unlawful and intentional causing of a person to engage in" specified sexual activities. *Id*. at 1138 (internal citations and quotations omitted). The Court noted that the definition "says nothing about force

or coercion. . . ." *Id.*  The Court proceeded to analyze the different forms of CSP II, noting that force or coercion was an express element of some but not all forms.  *Id.*  Because the legislature expressly included force or coercion as an element of some of the forms of CSP II, the court concluded that it intentionally excluded it as an element from those forms where coercion or force was not expressly stated, including criminal sexual penetration perpetrated during the commission of another felony.  *Id.* at 1138-39.  In addressing the defendant's concern that he could be convicted of engaging in purely consensual sex, the court noted the following:

> [The defendant] overlooks those parts of the CSP II . . . instructions requiring the jury to find that [the defendant] *caused* [the victim] to engage in the various sex acts and that the acts occurred *during* the commission of the underlying felony. The emphasized words constitute a requirement that there be a causal connection between the felony and the sex act.  This requirement is enough to insure that an accused will not be convicted for engaging in purely consensual sex.

*Id.* at 1139-40 (emphasis in original).  Ultimately, the Court concluded that force or coercion is not an essential element of CSP II, and further expounded that "[t]he legislature did not limit CSP II to only felonies involving force or coercion, <u>but simply required that the CSP be caused by the defendant in the commission of another felony</u>."  *Id.* at 1140 (internal citation and quotation omitted) (emphasis added).   The Court affirmed, thereby approving of the jury instructions provided at trial.

In *State v. Stevens*, 2011 WL 704649 (NM Ct. App. 2011) (*Stevens I*), the defendant appealed his convictions for CSP II on the grounds that "the State failed to establish or charge the essential element of unlawfulness; that is, the State established sexual penetration in the course of a felony but not any theory of *criminal* sexual penetration."  *Id.* at *1.  The facts of the case involved a defendant who had her thirteen-year-old daughter perform fellatio on the defendant's adult boyfriend while the three of them were high on methamphetamine.  *Id.* at *1. The thirteen-year-old daughter testified that she willingly performed fellatio on her mother's

boyfriend; her mother did not force her. *Id*. at *1.  At trial, the district court instructed the jury that the elements of CSP II required the jury to find that (1) the defendant caused the victim to engage in fellatio on the boyfriend, (2) the defendant committed the act during the commission of distribution of a controlled substance to a minor, and (3) the defendant distributed a controlled substance to the victim. *Id*. at *3.  As in *Maestas*, the district court did not instruct the jury that the fellatio had to be unlawful standing alone.  On appeal, the defendant argued that CSP II "did not criminalize all sexual intercourse perpetrated in the course of a felony, only all 'criminal' sexual intercourse." *Id*. at *3.  Accordingly, the defendant argued that the failure of the district court to instruct the jury that the sexual penetration had to be unlawful resulted in fundamental error requiring reversal of her charges. *Id*. at *3.  The court concluded that the description of the sex act, which included the victim's age, "was sufficient to satisfy the unlawfulness element." *Id*. at *3.  Also, the court noted that the instructions were sufficient under the holding of *Maestas* because the jury was instructed that the defendant had to cause the victim to engage in sex acts and that the sex acts occurred during the underlying felony. *Id*. at *3.

In *State v. Stevens*, 323 P.3d 901 (NM 2014) (*Stevens II*), the New Mexico Supreme Court revisited the holding of *Maestas* to "clarify that simply causing another person to engage in otherwise lawful sexual intercourse at the same time a felony is being committed does not constitute the crime of criminal sexual penetration during the commission of a felony." *Id*. at 902.  The court analyzed the holding of *Maestas*, noting that the *Maestas* court never "considered the significance of the basic definition of criminal sexual penetration in Section 30-9-11(A) (2003), requiring the penetration to be both 'unlawful and intentional.'" *Id*. at 905.  The *Stevens II* court questioned the wisdom of the *Maestas* and *Stevens I* courts' conclusion that a defendant could not be convicted of engaging in purely consensual sex so long as the state

established that the sex occurred during the commission of a felony, noting that there was no explanation "how, in the elements instruction, the requirement of the concurrent timing of a felony and a sex act would insure that a person would not be convicted for engaging in purely consensual and lawful sexual activity." *Id*. at 906. Ultimately, the *Stevens II* court held that "when a CSP II charge is based on the commission of a felony, it must be a felony that is committed against the victim of, and that assists in the accomplishment of, sexual penetration perpetrated by force or coercion or against a victim who, by age or other statutory factor, gave no lawful consent." *Id*. at 910 (emphasis added). While the court held that the district court's jury instructions were in error for failing to instruct the jury on the unlawfulness of the sexual penetration in the case, the court affirmed the conviction because the overwhelming evidence established that the sexual penetration was unlawful. *Id*. at 911-12.

## 2. The Holding in *Stevens II* Likely Applies Retroactively and, Therefore, Can Be Considered in a § 2255

In *Davis v. United States,* 417 U.S. 333, 346 (1974), the Supreme Court held that a petitioner collaterally attacking his conviction should be given the benefit of case law decided after his conviction when the conviction was "for an act that the law does not make criminal." The Court reasoned that "[t]here can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice' and 'present(s) exceptional circumstances that justify collateral relief under § 2255." *Davis*, 417 U.S. at 346-47; *see also Schiro v. Summerlin*, 542 U.S. 348, 351-52 (2004) (holding that new substantive rules apply retroactively, including "decisions that narrow the scope of a criminal statute by interpreting its terms"); *Bousley v. United States*, 523 U.S. 614, 620 (1998) (noting that a decision holding that a substantive criminal statute does not reach certain conduct may be used to collaterally attack a conviction).

11

The Tenth Circuit applied *Davis* in *United States v. Dashney*, 52 F.3d 298 (10th Cir. 1995). Dashney was convicted in 1990 of violating 31 U.S.C. §§ 5322(a) and 5324(3) by structuring cash transactions in order to evade currency reporting requirements. *Id.* at 298. In 1994, the Supreme Court held that a conviction under §§ 5322(a) and 5324(3) requires that the defendant know that the structuring in which he engaged was unlawful. *See Ratzlaf v. United States,* 510 U.S. 135 (1994). After the *Ratzlaf* decision, Dashney filed a petition in district court to vacate his sentence under 28 U.S.C. § 2255, which the court denied, relying on *Teague v. Lane,* 489 U.S. 288 (1989). On appeal, the Tenth Circuit reversed the district court's order dismissing Dashney's petition. *Dashney*, 52 F.3d at 299. The Tenth Circuit distinguished *Teague,* which applied to a new rule of criminal procedure, from the situation presented in *Dashney. Id.* The Tenth Circuit explained that *Ratzlaf* did not announce a new rule of criminal procedure, but rather a substantive change in the law. *Id.* Consequently, the Court determined that *Davis* required that *Ratzlaf* apply retroactively. *Id.*

**3. The Court Should Vacate Defendant's Conviction for Coercion and Enticement.**

There is no evidence that the sexual activity the Defendant engaged in with Jane Doe was unlawful standing alone. Accordingly, in light of the *Steven II* holding, the factual basis for the Defendant's guilty plea to coercion and enticement no longer establishes that the Defendant could have been charged with CSP II and, therefore, no longer support a conviction for coercion and enticement. Furthermore, under the principles enunciated in *Davis* and its progeny, the holding in *Steven II*, which narrowed the scope of conduct that qualifies as CSP II, likely applies retroactively to the Defendant. For this reason, the United States agrees that the Defendant is entitled to the vacatur of his conviction for coercion and enticement pursuant to § 2255.

C.  DEFENDANT'S POSSESSION OF CHILD PORNOGRAPHY CONVICTION

The Defendant's admission under oath that he committed the crime of possession of child pornography should stand.  In contrast to the Defendant's coercion and enticement conviction, there has been no change in law or fact that casts doubt on his sworn guilty plea.  Furthermore, as recounted earlier, the evidence support his guilt of this offense is overwhelming.  The Defendant recognizes as much, given that he does not claim in his petition that he is innocent of this charge.  Rather, he attempts to challenge this conviction on the following grounds: (1) his Speedy Trial Act rights were violated; (2) prosecutorial misconduct; (3) the denial of his Eighth Amendment right to reasonable bail; and (4) his plea agreement is void ab initio.  The Court should deny the Defendant's requested relief with respect to his child pornography conviction because he waived them in his plea agreement and because they are procedurally barred by his plea of guilty and failure to raised them on direct appeal.  Accordingly, the Court should deny the Defendant's request to vacate his possession of child pornography conviction and, instead, should simply resentence him on this charge.

**1.  Defendant Waived All of the Claims Raised in His Petition**

A plea agreement waiver of post-conviction rights is generally enforceable.  *United States v. Cockerham*, 237 F.3d 1179, 1181 (10th Cir. 2001).  A court will enforce such a waiver so long as: (1) the collateral attack falls within the scope of the waiver; (2) the defendant knowingly and voluntarily waived his right to collateral review; and (3) enforcing the waiver would not result in a miscarriage of justice.  *United States v. Hahn,* 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam) (reviewing waiver of appellate rights); *see also Cockerham,* 237 F.3d at 1182–83 (holding that the enforceability of a waiver of the right to bring a collateral attack is assessed under the same standards as a waiver of appellate rights).

In his petition, the Defendant does not acknowledge his post-conviction waiver or specifically address why it should not be enforced.  The Defendant does allege that his plea was not knowing or voluntary.  His argument, however, appears to relate only to his plea of guilty to coercion and enticement.  Nonetheless, absent other guidance in the petition, the United States will construe his claim that his plea was not knowing and voluntary to serve as the Defendant's basis for attacking his waiver to post-conviction challenges.  A review of the *Hahn* factors reflects that the Defendant's post-conviction waiver should be enforced and his petition dismissed.

> a.   *Defendant's Post-Conviction Challenges Fall Within the Scope of His Waiver*

The Defendant's plea agreement waiver states:

> The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a Defendant the right to appeal a conviction and the sentence imposed. Acknowledging that, the Defendant knowingly waives the right to appeal the Defendant's convictions and any sentence that is consistent with the sentence agreed to by the parties in this agreement, as well as any fine and/or restitution ordered by the Court.  The Defendant specifically agrees not to appeal the imposition of any term of supervised release or any condition of supervised release.  In other words, the Defendant waives the right to appeal both the Defendant's convictions and the right to appeal any sentence imposed in conformity with the terms of the plea agreement in this case.  In addition, the Defendant agrees to waive any collateral attack to the Defendant's convictions pursuant to 28 U.S.C. § 2255, except on the issue of counsel's ineffective assistance in negotiating or entering this plea or this waiver.  The only exception to the Defendant's waiver of the right to appeal is that the Defendant reserves his right to appeal the District Court's September 2, 2011 ruling denying the Defendant's motion to suppress in this case (Doc. 175).

Doc. 195 at 14-15, ¶ 22.  The Defendant's waiver encompasses all collateral attacks pursuant to 28 U.S.C. § 2255, with the limited exception of claims alleging ineffective assistance of counsel in negotiating or entering into the plea or waiver.  None of the Defendant's challenges to his possession of child pornography conviction are premised on a claim that his counsel was ineffective in any way.  Accordingly, all of his claims fall within the scope of the waiver.

14

       b.   *The Clear Language of Defendant's Plea Agreement and the Thorough Rule 11*
           *Plea Colloquy Establish that Defendant's Waiver Was Knowing and Voluntary*

In determining whether a waiver is knowing and voluntary, the reviewing court looks at

two factors.  First, the court "examine[s] whether the language of the plea agreement states that

the defendant entered the agreement knowingly and voluntarily."  *Hahn*, 359 F.3d at 1325

(internal citation omitted).  Second, the court "look[s] for an adequate Federal Rules of Criminal

Procedure 11 colloquy."  *Id*.  While the court will typically look at both of these factors, either of

these two factors alone may be sufficient to uphold a waiver.  As the Tenth Circuit expressly

stated "either the express language of the plea agreement, if sufficiently clear, detailed, and

comprehensive, or the probing inquiry of a proper Rule 11 colloquy could be enough to conclude

that the waiver was knowing and voluntary."  *United States v. Tanner*, 721 F.3d 1231, 1234

(10th Cir. 2013).  Moreover, the "synergistic effect" of a thorough plea agreement and Rule 11

colloquy will conclusively establish the voluntariness of a waiver.  *Id*.

Here, the record clearly demonstrates that the Defendant freely and voluntarily pled

guilty before the district court, and knowingly and voluntarily waived his right to post-conviction

relief.  In his plea agreement, under the heading "<u>VOLUNTARY PLEA</u>," the Defendant

represented that his "plea of guilty is freely and voluntarily made and is not the result of force,

threats, or promises (other than the promises set forth in this plea agreement)."  Doc. 195 at 16,

¶ 26.  The Defendant also represented that he was pleading guilty because he "is in fact guilty."

*Id*; *see also id*. at 6, ¶ 10 ("By my signature on this plea agreement, I am acknowledging that I

am pleading guilty because I am, in fact, guilty of the offense(s) to which am pleading guilty.")

In fact, the plea agreement contains "<u>DEFENDANT'S ADMISSION OF FACTS,</u>" wherein he

admits to the elements of his possession of child pornography offense.  *Id.* at 6-11, ¶¶ 10-13.

Just above his signature on the plea agreement, the Defendant acknowledged that, "I understand

the terms of this Agreement, and I voluntarily agree to those terms." *Id.*  The Defendant further

acknowledged that prior to entering into the plea agreement, his attorney had advised him of his

rights and possible defenses. *Id.* at 17-18.  Finally, as discussed above, under the heading

"<u>WAIVER OF APPEAL RIGHTS</u>," the Defendant represented that he "knowingly waives the

right to appeal [his] convictions and sentence . . . [and] agrees to waive any collateral attack to

[his] convictions pursuant to 28 U.S.C. § 2255, except on the issue of counsel's ineffective

assistance in negotiating or entering this plea or this waiver." *Id.* at 14-15, ¶ 22.  The clear,

detailed, and comprehensive language of the plea agreement demonstrate that the Defendant

entered into the agreement and waiver knowingly and voluntarily.

   The Defendant's through plea colloquy also supports enforcement of the appeal waiver.

During his plea colloquy, the magistrate judge advised the Defendant of his rights, confirmed

that he was an educated man, who was not under the influence of alcohol, drugs, or medication,

and that he had not recently been treated for any kind of mental illness or any kind of addiction.

9/30/11 Tr. at 2-4.  The judge confirmed that the Defendant had received sufficient time to

discuss the charges in the information and the terms of the plea agreement with his attorney.

9/30/11 Tr. at 4-5.  The Defendant also responded affirmatively that he was satisfied that he

understood the terms of his plea agreement.  9/30/11 Tr. at 6.  The Defendant denied entering the

plea agreement as a result of any threats or coercion.  9/30/11 Tr. at 6.  When asked whether he

was pleading guilty voluntarily because he was guilty, the Defendant responded unequivocally,

"Yes, your honor."  9/30/11 Tr. at 6.  When discussing the appeal waiver, the prosecutor

expressly noted that the Defendant had "waived his appeal rights except on the issue of

ineffective assistance of counsel pertaining to negotiating or entering this plea . . . ."  9/30/11 Tr.

at 9.  The judge then proceeded to further probe the Defendant's understanding of the appeal

waiver, stating "Mr. Christy, we've been talking about your waiver of appeal rights. Have you discussed this thoroughly with your attorney and are you satisfied you understand what you're waiving and what you're reserving?" 9/30/11 Tr. at 9. The Defendant responded that he understood the appeal waiver. *Id*. With respect to the factual basis, the judge asked the Defendant whether all the facts alleged were true and correct, and specifically advised the Defendant to "take your time and look at them" to ensure that "they're accurate from your point of view." 9/30/11 Tr. at 10-11. The Defendant acknowledge that the factual basis for the plea agreement was true and correct with one exception, namely that the there was an excerpt of an email that was not complete. 9/30/11 Tr. at 11-12. The Defendant then informed the judge that he was not concerned about the abbreviated email reference because he could discuss the missing portions at sentencing. 9/30/11 T. at 12. Finally, the Defendant pleaded guilty to both charges in the information and the judge made a finding that the Defendant was "fully competent and capable of entering informed please; that the pleas of guilty are knowing and voluntary pleas supported by independent evidence of the elements of the offenses charged." 9/30/11 Tr. at 13-14. The court's thorough Rule 11 plea colloquy reflects that the Defendant knowingly and voluntarily entered into his plea and waiver.

In summary, the Defendant's plea agreement in this case is clear, detailed, and comprehensive. He acknowledged that he understood and agreed to its terms. In addition to the unambiguous language in the Defendant's plea agreement, the court conducted a thorough and probing Rule 11 plea colloquy. Accordingly, while this Court could uphold the Defendant's post-conviction waiver based on either the comprehensive plea language or the Court's plea colloquy, the synergistic effect of having both conclusively supports the knowing and voluntary nature of the waiver.

*c.   Enforcing the Waiver Would Not Result in a Miscarriage of Justice*

A waiver of post-conviction rights results in a miscarriage of justice and is unenforceable if the defendant can establish one of the following: (1) the district court relied on an impermissible factor such as race; (2) the prisoner's counsel was ineffective concerning the negotiation of the plea agreement; (3) the sentence exceeds the statutory maximum; or (4) the waiver is otherwise unlawful.  *Cockerham,* 237 F.3d at 1182 (citations omitted).   There is no evidence the district court relied on an impermissible factor.  The Defendant has not alleged that his counsel was ineffective concerning the negotiation of the plea agreement.  Nor is there evidence that counsel was ineffective in negotiating the plea agreement.  Defense counsel is not clairvoyant and could not be expected to anticipate the change of law that occurred after the Defendant's plea and sentencing.  The sentence does not exceed the statutory maximum.  The waiver is not otherwise unlawful.

For the foregoing reasons the Court should conclude that the Defendant's challenges to his possession of child pornography conviction are waived by his appeal waiver.

## 2.   Defendant's Challenges to His Possession of Child Pornography Conviction Are Procedurally Barred.

Even if the Defendant had not waived his right to seek collateral review of his possession of child pornography conviction, the Defendant's challenges still fail because they are procedurally barred by his guilty plea and failure to raise the issues on direct appeal.

A guilty plea may only be attacked on collateral review in strictly limited circumstances. *Bousely v. United States*, 523 U.S. 614, 621 (1998).  As noted by the Supreme Court,

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and

18

> voluntary. If the answer is in the affirmative then the conviction and the plea, as a
> general rule, foreclose the collateral attack.

*United States v. Broce*, 488 U.S. 563, 569 (1989).  "And even the voluntariness and intelligence

of a guilty plea can be attacked on collateral review only if first challenged on direct review."

*Bousley*, 523 U.S. at 621.  This is so because "[h]abeas review is an extraordinary remedy and

will not be allowed to do service for an appeal."  *Id.* (internal citations and quotations omitted);

*see also United States v. Cervini*, 379 F.3d 987, 990 (10th Cir. 2004) ("A § 2255 motion is not

intended as a substitute for an appeal.").

      The Defendant did not challenge his conviction for possession of child pornography on

direct appeal, and therefore his current challenges are procedurally barred.  This includes his

Speedy Trial Act challenge, *see United States v. Griffith*, 227 F. App'x 764, (10th Cir. 2007)

(noting procedural bar to Speedy Trial Act challenge not raised on direct appeal); his claim of

prosecutorial misconduct, *see United States v. Gaither*, 300 F. App'x 612 (10th Cir. 2008)

(stating "[a]s to the prosecutorial misconduct issue, we agree with the district court that this

claim is procedurally barred.  A defendant's failure to present an issue on direct appeal bars him

from raising the issue in a § 2255 . . . ."); his Eighth Amendment reasonable bail challenge, *see*

*United States v. Ratzlaff*, 160 F. App'x 721, 2005 WL 3514592, at *2 (10th Cir. 2005) (noting

that defendant's 2255 challenge based in part on Eighth Amendment violations was procedurally

barred by his failure to raise them on direct appeal); and Christy's equal protection challenge;

*United States v. Avitia-Bustamante*, 514 F. App'x 827 (10th Cir. 2013) (finding that the

defendant's equal protection claims were procedurally barred due to his failure to raised them on

direct appeal).

      A defendant may avoid a procedural bar only if the defendant can demonstrate either (1)

good cause for failing to raise the issue earlier and actual prejudice, or (2) that he is actually

innocent. *Bousley*, 523 U.S. at 621.  For all but his Speedy Trial Act challenge, the Defendant makes no effort to avoid the procedural bar by establish good cause and prejudice or actual innocence.  With respect to his Speedy Trial Act claim, he claims good cause exists to excuse his failure to raise this issue on direct appeal due to some unspecified act by the United States that prevented him from raising it.  *See* Doc. 250-1 at 9 ("Although this speedy trial claim was not presented on direct appeal, fault lies with the government.").  This claim is disingenuous at best given that the Defendant actually raised this claim before the district court.  *See* Doc. 67.  The Defendant cannot now claim that the United States prevented him from raising a claim on direct appeal that he managed to raise before the district court.  In addition to failing to establish good cause, the Defendant has not established actual innocence.  Given that he has failed to meet the standard for avoiding the procedural bar, the Defendant's challenges to his possession of child pornography conviction should be denied.

Finally, even if the Defendant were permitted to challenge his possession of child pornography conviction, he could only assert a challenge grounded on a claim that his plea was neither counseled nor voluntary.  *See Broce*, 488 U.S. at 569.  While the Defendant has claimed that his coercion and enticement plea was not knowing and voluntary, *see* Doc. 250-1 at 16-17, he has not made such a claim with respect to his plea to possession of child pornography.  As discussed above, *see discussion supra* at 14-17, the evidence establishes that the Defendant's plea to possession of child pornography was knowing and voluntary.

Accordingly, the Court should deny the Defendant's challenges to his conviction for possession of child pornography on the grounds that they are procedurally barred.

D.   IMPACT OF VACATING DEFENDANT'S COERCION AND ENTICEMENT
     CONVICTION ON HIS CHILD PORNOGRAPHY CONVICTION

If a court determines that a defendant is entitled to relief under § 2255, then the statute requires that the court "vacate and set the judgment aside and ... discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255.  Assuming the Court vacates the Defendant's conviction for coercion and enticement, the United States submits that the appropriate remedy would be resentencing on his remaining possession of child pornography conviction.

The United States recognizes, however, that the Court may determine that the error with the Defendant's coercion and enticement conviction infects his guilty plea to possession of child pornography, under the principals of mutual mistake and the "sentencing package" theory.  In *United States v. Lewis*, 138 F.3d 840 (10th Cir. 1998), the defendant had been charged with eleven counts of offenses involving drugs and firearms but, under a plea agreement, had pled guilty to just one of the counts, use of a firearm in relation to a drug trafficking offense under 18 U.S.C. § 924(c).  After the Supreme Court modified the law for § 924(c) charges in *Bailey*, the defendant attacked his conviction and sentence, arguing that he was unconstitutionally imprisoned because the statute under which he was convicted and sentenced did not reach his conduct.  The defendant, however, did not request that the entire plea be voided (as that would leave him potentially vulnerable to prosecution on the dismissed counts); rather, he requested immediate release, since he was imprisoned on the § 924(c) count only.  The Tenth Circuit affirmed the district court's decision that, where a plea agreement is based on a mutual mistake as to the elements of a charge, the appropriate remedy is to void the entire plea agreement, because a plea agreement is a "package" deal that a district court has the authority to "vacate ... when a conviction that is part of the plea package is vacated."  *Id*. at 842.  In recognizing the

district court's authority to void the entire plea agreement, the Tenth Circuit also recognized that a district court also has authority to vacate one conviction and resentence a defendant on remaining related convictions.  *Id*.  Should the Court elect to vacate both of the Defendant's convictions due to the error involving the Defendant's coercion and enticement conviction, the United States seeks authority, under the doctrine of frustration of purpose, to revive the indictment it dismissed pursuant to the plea agreement.  *See United States v. Bunner*, 134 F.3d 1000, 1004-05 (10th Cir. 1998) (applying doctrine of frustration of purpose to permit United States to revive dismissed charges after plea agreement was invalidated by change of law).  While Count 1 of the dismissed indictment suffers from the same defect as the Defendant's coercion and enticement conviction, the dismissed possession of child pornography charges remain viable and the United States has every intention to pursue convictions on these charges.

## **<u>CONCLUSION</u>**

In conclusion, due to the holding in *Stevens II*, the United States agrees that the Defendant's conviction and sentence for coercion and enticement should be vacated.   The Court should deny the Defendant's challenges to his possession of child pornography conviction, however, because the Defendant waived them and they are procedurally barred.  Should the Court determine that the Defendant's possession of child pornography conviction must also be vacated due to the error with the Defendant's coercion and enticement conviction, the United States seeks to revive the dismissed indictment under the doctrine of frustration of purpose.

Respectfully submitted,

DAMON P. MARTINEZ
United States Attorney

<u>Electronically filed 12/05/2015</u>
HOLLAND S. KASTRIN
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico  87103
(505) 346-7274

I HEREBY CERTIFY that on the 5th day
of December, 2015, I filed the foregoing
pleading electronically through the CM/ECF
system, which caused counsel of record
for Defendant to be served by electronic means.
Furthermore, I mailed a copy of this filing to
Defendant at the following address:

Edward Christy
Reg. # 54280051
FCI Elkton
P.O. Box 10
Lisbon, OH  44432

***<u>Electronically filed on 12/05/15</u>***
Holland S. Kastrin
Assistant United States Attorney